# STATE OF MICHIGAN

# COURT OF APPEALS

In re HICKS, Minors.

UNPUBLISHED
July 13, 2017

No. 335976
Wayne Circuit Court
Family Division
LC No. 14-516277-NA

In re HICKS, Minors.

No. 335977
Wayne Circuit Court
Family Division
LC No. 14-516277-NA

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father appeal as of right the trial court's order terminating their parental rights to the minor children. The trial court terminated the parental rights of both respondents pursuant to MCL 712A.19b(3)(c)(i), (g), and (j). We affirm.

Respondents have four children between them, CLH, KCH, KMH, and KHH. Respondent-mother also has two older children, KM and RM, from a prior relationship.[1] Before September 2013, respondents were married and living in the Detroit area with the six children. In September 2013, after respondent-father discovered respondent-mother's alleged infidelity, the couple separated. Respondent-father left the family home and moved to Cleveland, Ohio, to live with his mother. All of the children remained in Detroit with respondent-mother. In January 2014, the Department of Health and Human Services ("DHHS") received a neglect complaint. Respondent-mother was offered preventative services to address issues of physical and environmental neglect. This was not the first complaint involving the family. Child Protective Services ("CPS") had previously received complaints of neglect in 2004, 2006, and three complaints in 2013.

---

[1] Respondent-mother's parental rights to KM and RM are not at issue in this appeal.

The preventative services were insufficient to ward off further CPS involvement. On April 7, 2014, CPS, once again, received a complaint of physical and environmental neglect of the children. During the ensuing investigation, CPS discovered that the family was living in squalor. The house was excessively cluttered, human and animal feces were found all over the home, the carpet was littered with crumbs, gnats were swarming about, and there was a foul odor throughout the home. No food was in the kitchen cabinets and respondent-mother admitted that there was none in the refrigerator. When the children were located at their schools, they were found hungry, dirty, and wearing filthy, ill-fitting clothing. All of the children had a foul body odor and their hair was matted and dirty. The children were removed from the home and eventually placed in separate, non-relative licensed foster homes. Because he was living in Ohio, respondent-father was apparently unaware of the condition of the children and the home in which they lived. Indeed, respondent-father had not seen his children since he left for Ohio in September 2013.

Immediately after the youngest child was placed with her foster parents, the foster mother noticed the child's foul body odor. The foster mother bathed the child four times on the day she arrived in the home and still the body odor persisted. The child was clawing and scratching all over her body, but in particular, she was scratching her vaginal area. Although it would take several months, and multiple doctors' appointments, the child was eventually diagnosed with chlamydia in August 2014. Chlamydia is a sexually transmitted disease ("STD"), which is usually transmitted either through genital-to-genital contact or to a newborn during the birthing process. There was no evidence that the child was born with chlamydia.

Following an adjudication trial in May and June 2014, the trial court found statutory grounds to assume jurisdiction over the children. Respondents were ordered to participate in, among other things, parenting classes, parenting time, and individual and family counseling. They were also ordered to obtain and maintain suitable housing and a legal source of income. When petitioner concluded approximately two years later that respondents' progress was insufficient, it sought to terminate parental rights. A supplemental permanent custody petition was filed in January 2016. The termination hearing began in March 2016 and was eventually concluded in November 2016, following which the trial court entered its order terminating respondents' parental rights to their four children.

On appeal, both respondents argue that the trial court erred when it concluded that clear and convincing evidence supported the termination of their parental rights. We disagree.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Trejo,* 462 Mich 341, 355; 612 NW2d 407 (2000).[2] This Court will review the trial court's factual findings and final decision concerning termination of parental rights for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A finding is

_____

[2] *In re Trejo* was superseded by statute on other grounds as observed in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989).

Respondents' parental rights were terminated pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). These statutory provisions permit termination of parental rights when the following conditions are satisfied:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3).]

The trial court did not clearly err when it terminated respondents' parental rights to their children under the foregoing statutory grounds. We will address the record evidence that amply supported the trial court's findings pursuant to each statutory subsection.

The children were removed from respondents' care and made temporary court wards because they were found living in squalor with their mother and essentially abandoned by their father. Both respondents were provided a multitude of services to rectify the conditions that caused the children to come into care. At the conclusion of the termination hearing, the children had been in care for almost three years. During this extensive period, respondents failed to demonstrate that they were in any better position to properly parent their children than when the children were removed from their care.

Although respondent-mother had participated in parenting classes and individual therapy, she did not benefit from the services offered. She still was unable to demonstrate that she could provide a safe and stable environment for her children. Respondent-mother continued to be dishonest with the caseworker, her therapist, and her parent-partner. Respondent-mother did not have suitable housing or a legal source of income. Indeed, she fraudulently misled the trial court and her caseworker with fabricated documents intended to substantiate employment and housing. She consistently provided non-working telephone numbers for her alleged employer, making it

impossible to verify employment. On several occasions, she also failed to provide a legitimate address for purposes of assessing the suitability of a home placement. Respondent-mother also failed to appreciate the significance of discovering that her youngest daughter had contracted chlamydia. She failed to cooperate with the CPS investigation in this regard. Respondent-mother was not candid or honest with the caseworker regarding her relationship with her boyfriend, his whereabouts, and whether either of them had complied with the STD testing that had been requested of them. Respondent-mother also did not adequately address her mental health issues. She failed to follow through with the recommendations made by the psychiatrist for treatment of her depression and anxiety.

Respondent-father completed several components of his treatment plan, but ultimately there was little evidence that he benefited from the services offered and virtually no evidence that he was prepared to parent four children. Respondent-father did not visit regularly with his children, and was unable to even identify their special needs, let alone articulate how he would provide for those needs. Although he was consistently employed, he did not provide financially for his children before or after they came into foster care. Respondent-father candidly admitted at the termination hearing that he could have done more to financially support his family. With respect to housing, respondent-father had not secured stable housing suitable for four children. While the children were in foster care, respondent-father's own housing was unstable as he moved back and forth, from his mother's home to various other housing situations. Although respondent-father claimed that his mother was going to give him her three-bedroom house in Ohio for the benefit of the children, there was nothing in the record to suggest that a transfer of ownership or leasing of the house had occurred to provide stable and secure housing for the children.

On the basis of the foregoing, there was clear and convincing evidence to terminate respondents' parental rights to their minor children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court correctly concluded that respondents simply could not demonstrate that they were in a position to properly parent their children or that they would be able to do so within a reasonable time given the ages of the children. MCL 712A.19b(3)(c)(*i*). Moreover, in *In re White*, 303 Mich App at 710-711, this Court recognized the following with respect to MCL 712A.19b(3)(g) and (j) :

> A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody [as set forth in MCL 712A.19b(3)(g)].

> * * *

> Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home [as set forth in MCL 712A.19b(3)(j).]

Where both respondents had not satisfied key provisions of their parent agency agreements, the trial court correctly found that clear and convincing evidence supported the termination of their parental rights pursuant to MCL 712A.19b(3)(g) and (j).

Respondents next argue that the trial court erred when it found that termination of their parental rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors,* 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App 126, 129; 777 NW2d 728 (2009).

The trial court may consider several factors when deciding if termination of parental rights is in a child's best interests, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home[.]" *In re Olive/Metts,* 297 Mich App at 42 (citations omitted).

The trial court concluded that a preponderance of the evidence demonstrated that termination of respondents' parental rights was in the children's best interests. Having reviewed the record, we agree with the trial court's determination. At the time the children were removed from respondents' care they had been neglected by both respondents. The children were living in squalor, and had not been properly fed, clothed or cared for. The youngest child had contracted a sexually transmitted disease. The children had issues with both enuresis and encopresis. At the time of the termination hearing, the children had been in care for two years and seven months. During this time, respondents were offered a multitude of services that they either failed to meaningfully participate in or benefit from. Respondents could not demonstrate that they can properly parent their children and provide for their needs.

Both respondents rely on the bond that existed between them and their children. Although the bond was stronger with some of the children than others, we recognize that a bond had been forged. However, the children had been in foster care for well over two years and there was no indication that respondents' ability to properly parent their children was going to manifest itself within a reasonable time. This was particularly true considering the length of time the children had been in foster care and the fact that neither respondent had benefited from the services offered. The children required and deserved stability, consistency, and finality. The trial court properly found that their need for safety, permanency, and finality outweighed the existence of any bond between respondents and their children. Notably, all four of the children were doing well in their placements. When balancing the best-interest factors, a trial court may also consider the advantages of a foster home over the parent's home. *In re Olive/Metts,* 297 Mich App at 42. Although the youngest child's foster mother was the only one interested in adoption at the time of the termination hearing, this does not preclude the possibility of adoption for the others in the future. Moreover, the foster homes were meeting the children's special needs. Respondents clearly were not in a position to provide for them. Indeed, respondent-father was not even aware of the particular needs his children required because he had not made any meaningful effort to be involved in his children's lives. Indeed, he only attended parenting time when it coincided with a scheduled court date, i.e. approximately every three months, and he never attended any of the children's medical or school appointments. It was to the children's benefit that they were placed in stable homes where they were progressing and that this progress

could continue. Accordingly, the trial court did not clearly err in finding that termination of respondents' parental rights was in the children's best interests.

Affirmed.


/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood